Case number 25-1140. In re, Iowaska Church of Healing petitioner. Mr. Steele for the petitioner, Mr. Scurgill for the respondent. All right, Mr. Steele, good morning. Good morning, Your Honors. My name is Simon Steele. I represent petitioner, Iowaska Church of Healing, which I'll refer to as the church. I'd like to reserve 2 minutes for a bottle, please. In Roman Catholic Diocese of Brooklyn v. Cuomo in 2020, it took the U.S. Supreme Court just 16 days to grant a petition to exempt Catholic sacraments from public health laws restricting gathering sizes. The court treated that matter as an emergency based on the well-established principle that the loss of First Amendment freedoms, even for minimum periods of time, unquestionably constitutes irreparable injury. No doubt, but use of a Schedule I hallucinogen was not on the other side of the balance. To be sure, Your Honor, but just to be clear, in this case, my client has been subject to a prior restrict on its primary sacrament, completely prohibiting the sacrament for a total of 80 months. Now, to be clear, in our petition of pages 9 to 14, we detailed the history of that. We concede that some of that period of delay was due to us. However, more than 5 years of that delay has involved the application and or supplemental information sitting in front of the DEA and the DEA taking no apparent action on it. The DEA took no action on our application for the first three years. For the past 15 months, it's taken no application until a week ago. Could I ask what basically you're seeking? At times, you say what you primarily want is just the registration and you understand the government's concerns and you're willing to work with them on diversion controls and record keeping and all of that. And yet, on the face of the application, you are asking for a blanket exemption from everything. Right. So, we've attempted to follow the government's guidance, which you see in Appendix B. The guidance isn't entirely clear as to what the preferred procedure is. It's very clear that the DEA will decide what the procedure is. Our position all along has been, however you folks want to handle this, we're prepared to fill out any forms you want. We're prepared to go through all the regulations. If you want us to tie the safe to the wall with brackets and so on, we'll do that. If you want us to do all the registrations, we'll do that. If you want to waive some of the registrations, you can do under 822D and 957. We'll do that. We're happy to do it anyway. We got a bit more guidance than the guidance document itself, or at least we thought we did, when we saw the Church of the Eagle on the Condor case, where the government entered into a detailed settlement a year and a half ago. We immediately proactively said, hey, folks, we understand every case is different. We'll understand Mutatis Mutandis. You'll want to change a few details, but we're happy to follow precisely the protocol that you did there. We're happy to fill out the registration forms. The government gave us certain forms when they did the site inspection back in July 2024. We filled them out immediately. The government has at various points said, we don't want you to do it like this. We want you to do it like that. One thing where our position has shifted, but it shifted in response to the government, is we originally said we plan to import plants from which the ayahuasca would be made. So the short answer is you're willing to work with them on? Absolutely, that's been true all along, and with the one exception of the period between 22 and 23, when we were incommunicado for a while, we have responded essentially within a week, as we did last week. And I hope you receive the documents that were sent two days ago. We've responded immediately to all of these queries. And I'd also like to note that Judge Henderson will recall from the case I argued here about a year and a half ago on behalf of the church against the IRS, that at that point we were addressing the issue of, is the church essentially an illegal entity that's trying to do illegal stuff? And we still are. But if you look at the government's correspondence and every question they've asked for the last two to three years, with long gaps in between, it's all been about registration details. And as you say, Judge Katz, it's anti-diversion details. It hasn't been about whether we essentially have a right under rougher to do this. It's been about, okay, what are the precise details that we're going to work out as to how we latch the safe to the wall and which forms we fill out? Go ahead. I expect counsel for the government might get up and say, this is a mandamus petition. What we did last week shows we're on it. There's no need for the court to intervene. Maybe could you just directly address how you would answer that argument? Absolutely, Your Honor. There have been several cases in this court where this court has heard that argument from various government agencies, core communications, Center for Biological Diversity, or so we've had two such cases. What this court has typically done is sort of take what is almost like a trust to verify kind of approach to that. Okay. The government says it's on it. That's great. We'll retain jurisdiction. We'll either set a deadline or we'll require the government to report back in 30 days or so. And in this case, in particular, again, I would stress, if you look at the correspondence from last week, what were they asking for? They were asking for, okay, who are your suppliers? We told them. Your supplier, how much? And will you bolt the fridge you told us about 15 months ago to the ground? We told them back in January 2024, we named Waking Herms, one of the suppliers that we've listed. We provided all their details then. Okay, we've got some updates now, unsurprisingly, after a year and a half, but it's not like we were the delay there. They were the delay. Why did it take them 15 months, indeed, almost two years since January 2024, to ask us to confirm that detail? That should be a one-day question. Why did it take them 15 months after a site inspection to say, hey, your safe looks great. Can you just pin it to the wall and show us how you pinned it to the wall? That should be a one-day conversation. It took 15 months at the end of a process that's taken six and a half years, so we're here to, we continue to want to work with them. We're very hopeful that the correspondence last week is a positive sign, but we are here after six and a half years and countless unreasonable delays to, frankly, ask this court to hold their feet to the fire in terms of getting this done soon. Let me ask you about 822D, and unless I'm reading it incorrectly, it says the Attorney General may, by regulation, waive the requirement for registration and so forth. Now, it doesn't say anything about guidance. It says by regulation, and if you had done what the Native Americans had done with peyote, which was by a rule, and they had sat on your petition for a rule for six years, you'd be in a lot better position, at least in our ability to say, make a decision, DEA. Why, am I reading this wrong? In other words, when I read it, I thought, well, I would think you'd say this was maybe not ultra viris, but for the DEA to use the guidance procedure rather than what the statute itself requires, which is by regulation. Right, Your Honor, I appreciate that point. First of all, as a matter of practical reality, the guidance has been there since 2009. We followed the guidance. It's their guidance. Secondly, our application pursuant to the guidance was really, as Judge Katz has sort of indicated, an application in the alternative, and that's how we've persistently framed it. If the agency believes, and if you believe, that a waiver is a proper course, notwithstanding the word regulation in 822D, that would be great, and we understand that in practice the agency has waived at least various aspects in cases like this. For example, it waived the fees that would normally be required for registrations in the Church of the Eagle in the Condon case. Secondly, however, in the alternative, we don't need 822D. We're not asking for action that is ultra viris. We have 823A and B. They can register us, and under 958 as well, they can register us. They shall register us. That's a clear duties act, if it's in the public interest or not contrary to the public interest, depending on which provision you're looking at. We are asking in the alternative for registration, and indeed, it is registration. Registration is the basis on which we've been proceeding per their informal guidance during this process for the past couple of years. Is the guidance, just following up on this distinction, is the guidance its own freestanding process for RFRA exemptions, or is it an elaboration on the regulatory scheme under 21 CFR 1307? The guidance itself does not purport to have legal effect. I thought it was separate, and yet we're primarily considering this case under the guidance, but your application says you're going under the reg. I'm not sure if anything turns on it. I'm just trying to figure out what scheme we're under. Subject to Judge Henderson's point about the word regulation in 822D, which, as I said, I believe we can bypass by using 823 and registration, we believe the guidance is consistent. Certainly, the government doesn't suggest it's inconsistent with both the CSA and RFRA. Of course, given the role of RFRA as a sort of super statute that amends other statutes, obviously, the CSA has to be nudged a little bit around the corners where it's inconsistent with wherever aspects of it might be inconsistent with RFRA to provide remedies that are required by RFRA. What's the legal source of the government's mandatory duty to act here? There are two independent legal sources. First, under the CSA, it shall register inappropriate cases based on the public interest, and RFRA obviously informs what the public interest is. That's CSA 823A, 823B. We cited the import provision. I believe it's 95A, maybe A. I'm not sure. I thought it was a formulation like shall register if the attorney general finds public interest. Consistent with or not inconsistent with the public interest. There's also an implementing regulation, 21 CFR 1301.31, which says the administrator shall, and I'm putting an ellipsis here, determine whether the applicable standards of 823 or 958 have been met by the applicant. If I may just add one thing to that, Your Honor, the government briefed national nurses on the issue of clear duty to act. That case is distinguished by national nurses. This court held that the statute in that case required the government to engage in a notice and comment rulemaking process to decide whether to issue a rule. However, a statutorily permissible result of that was to say, okay, we've decided to issue no rule. Therefore, in that case, the petitioners had asked for a remedy to which they weren't entitled, which was the actual issuance of occupational safety rule. Here, we're not asking for a remedy to which we're not entitled. We're not asking this court to compel them to grant us an exemption slash registration. We're asking this court to compel them to reach a decision on that within a reasonable time. I thought part of your duty to act argument also involved RFRA. Essentially, that RFRA… Sorry, absolutely, Judge Garcia. I got sidetracked and was going to get to that.  RFRA imposes mandatory statutory duties, CEEG, where v. NICS. The government has described both in the Eleventh Circuit and in papers in this case its guidance and its implementation of its guidance as its discharge of its statutory obligations under RFRA. I just want to make sure I understand your answers. This goes back to Judge Katz's first questions. Your position is essentially RFRA arguably imposes an affirmative duty. We're trying to do what DEA has asked us to do to secure an exemption. We're trying to follow the guidance. You can see that the guidance process is a little bit unclear about how it connects back to the statutory authority. But you are essentially asking us to compel them to conclude this guidance process. Is that a fair characterization? Absolutely. And if I can just very briefly add one thing going to your point. But for the guidance process and the way the guidance process has been interpreted in particularly the SolQuest case, we could very well be in a district court saying, hey, we have a clear right under RFRA. Please apply RFRA strict scrutiny standard and decide whether we get an exemption. This guidance process is a substitute that DEA created for RFRA suits in which we would have a clear right to obtain a decision applying the strict scrutiny standard. And the guidance process should not take away that clear right under RFRA. Thank you. Okay. Thank you for a couple of minutes and we have time. Mr. Sturgill. Good morning. May it please the court, Lowell Sturgill from the Department of Justice representing the government. So DEA has a compelling interest in conducting a full and thorough investigation about whether an exception can be made to the Controlled Substance Act based on RFRA or any other statute. And it's the Supreme Court in Ocentro said that ayahuasca is an extremely dangerous substance. So we know from the SolQuest case that people have died in religious ceremonies using ayahuasca. So what we are asking, again, as Judge Garcia noted, is allow the agency to continue and make a thorough investigation before it makes a ruling. Mr. Sturgill, how complicated can this be? I mean, this is maybe a month's long process. It's not a year's long process. So two answers. First of all, it is very complicated and I think you're looking at the settlement agreement. And you register thousands, tens of thousands of physicians who prescribe and you have whatever rules you have about the safe is in the wall or not. Or, you know, the locks are, you know, it's a skiff or it's not. I mean, this is not breaking massive new ground to work out these details. So respectfully, this is very different. And again, that settlement agreement is key. First of all, ayahuasca has to import these drugs from another country. So that raises innumerable complications. Who are they importing this from? And we have asked them that question several times. We've gotten answers, well, it might be this person. And finally, in response to the recent letter, we have a representation, yes, it's going to be from this person in Peru. Okay, well, this person's in Peru. And DEA needs to have the opportunity to investigate this person to see what their track record is and make sure they're not just diverting it to other uses. The problem, from my perspective, is less about the complexity and sensitivity of the decision, which may very well be true. But I don't know how I can look at this record and think that anyone at DEA was doing anything about this case for the past 15 months. There was a flurry of activity in the summer of 2024 after the site visit. And there were some follow-up questions. And it's been radio silence since. And the strong impression is that we asked a few follow-up questions, about three questions, because there was an argument next week in the D.C. Circuit. And is there anything you can say to disabuse me of that notion? So, to unpack that, first of all, IOWASCA treats this case as if they're the only matter pending before the DEA Diversion Control Office. There are numerous matters. And during this time period, if I could say, one of the things DEA was doing was granting religious exemptions for IOWASCA use by other applicants who had jumped in front of IOWASCA in line. Because, as you've heard this morning, IOWASCA itself took itself offline for almost a year and a half. And that alone would have entitled DEA to just deny the petition. Has that been happening since August 2024? So, the Church of Gaia application was granted in May of 2025. And the Eagle and Condor was in April of 2024. I'm told by DEA this is not on the record. There was another grant to Santo Daime in December of 2024. So, again, IOWASCA is not the only matter before DEA, and DEA has been granting other exemptions. So, what it is – I'm sorry. So, where is this application in the queue now? It's been pending for six years. So, it's being actively looked at. And that is shown by this most recent letter, which was not an attempt to influence the court. In fact, if anything, it was issued during the lapse. If DEA was looking to push this process back, it would have, I would think, used the lapse as an excuse to not do anything, at least during that period. So, again, DEA has been acting as fast as it could, consistent with other responsibilities, and with the very important issues in front of it, very complex issues about how to make sure that this material is safely used and is not diverted for other uses. We had some questions about how this guidance process connects to the statutory authority. And can you just tell us what DEA's view of this is? And if it – I can try to simplify. I'm interested in what authority – when DEA grants or denies this exemption, what authority will it be acting under? So, it will be acting under the Controlled Substances Act, first of all, because it's only the Controlled Substances Act that gives DEA authority to begin with to regulate illegal – I'm sorry, not illegal – controlled substances. Do you sort of view this as a step towards registration under 822A, a step towards exemption from registration under 822D? Is there any theory of how this action connects to a specific statutory provision? So, it could be either. And as you've heard from the beginning, their application mentioned that they were seeking a total exemption from the CSA, but they also said they were willing to work with DEA. So, a total exemption would be, I think, an 822D exemption. And there's a regulation, 1307, which allows a religious applicant or really any applicant to seek that. Another way of asking this question, I guess, is you're treating this as a request for an exemption in registration under the guidance, the process announcing this guidance. Is that just fair to say? So, after the Supreme Court decision in Ocentro, before Ocentro, the DEA had taken the position there was no opportunity for any religious exemption to the CSA, it was a closed system. Supreme Court decides Ocentro and then DEA says, okay, well, we'd like to give people some help in figuring out what they should do. So, they put this guidance out and they say, okay, well, you should submit a petition and submit it to this person. And because you're seeking a religious exemption, please tell us what your religion is. Please demonstrate why it's sincere. Please explain why denying your exemption imposes substantial burden on your free exercise of religion. And then be aware that as we look into this, we're going to investigate whether granting exemption would be consistent with public health and safety and would allow us to prevent diversion of these materials. So, that was, I think, good government. Do you need any formal regulatory exemption? Or can we just think of this as the agency's attempt ex ante to figure out the interaction of the Controlled Substance Act with RFRA and when strict scrutiny will or will not turn off the CSA by operation of RFRA? I think it's the latter because RFRA, by its terms, amends all federal statutes. So, RFRA is going to self-operational. So, RFRA itself amends the Controlled Substances Act. But that doesn't mean that... I mean, if there were no regulatory exemptions built into the CSA, you would still have to do all the same things because RFRA makes you. Or you would have to do all of the same things if you wanted to figure out when the CSA governs and when RFRA governs. Right. And again, but I think this sort of relates to the jurisdictional question. Even though that's true, the 11th Circuit in Solquest correctly held that the Court of Appeals has exclusive jurisdiction over these questions under Section 877 because the question still arises under the CSA. You're acting under both statutes. I'm sorry? You're acting under both statutes. So, they held that, but they also held that even if that weren't true, the first holding was this arises under the CSA because in analyzing whether to grant this exception, DE has to apply the standards of the CSA, which includes health and safety and prevention of diversion. So, that was the first holding, and the second holding was you're right, Judge Katsas. Even if it could be said to arise both under the CSA and under RFRA, 877 still applies because it doesn't require that something arise solely under the CSA. Back to the chronology for a minute. There have been a lot of extensive delays here, and some are attributable to the government and some to the church. So, tell me if there's anything wrong with this framing, which is at the beginning of the process, there was a long, concerning three-year delay by DEA. Then there was a long, concerning 16-month delay by the church, which would have entitled you to deem the application abandoned. So, taking all of that into account, one could reasonably just restart the clock around June of 2023 when the church finally gets back to you on your initial requests. And if that's true, we are now close to 30 months out from the start of the clock, and we're 16 months out from when you inspected their facilities. Do you quarrel with that framing? Maybe only with the description of the initial delay is concerning. Okay, but those are not small numbers. I understand. Beyond that, that's accurate. I have a question about the duty to act requirement, and I wonder how you reconcile your position on that issue with how you describe the interaction with RFRA and the CSA, which I believe you, I think, accurately said. RFRA requires DEA to consider circumstances in which an exemption is warranted. And that sounds a lot like a duty to act in the way we've talked about in mandamus cases. So, can you address that issue? Sure. So, I think, respectfully, I believe my friend hasn't characterized exactly correctly what we said in SolQuest. What we said in SolQuest is that RFRA provides an agency authority to consider a religious exemption request. We didn't say that RFRA requires the agency to grant or even make a ruling on such a request. We just said it gives them authority to do so. So, I think that's consistent with the text of the statute and with the Supreme Court's decision on Little Sisters. Now, it is true. The cases where we have found no duty to act would be the equivalent of saying RFRA says you may consider whether to not substantially burden religious exercise, but you actually don't have to reach a decision on that. So, we relied on national nurses in that respect, and it's a difficult argument. I think national nurses says things like, well, the statute in that case didn't require the agency to act at any particular time. And the court said, well, that's discretion, and the existence of discretion argues against granting extraordinary relief. And it also made a point about how agencies are faced with having limited staffing and have to make decisions, prioritize matters, and that relates to this case, too. So, but I understand that. Well, I think the simplest way to rule for a government in this case is just apply the track factors on whether this delay is extraordinary. When you go down the factors, we've made a powerful demonstration of why you should let the process run its course. And the most important, again, is this is a health and safety case, but it's a health and safety case on the government side as opposed to on the other side. Judge Henschel, you decided a couple of OSHA cases where the health and safety factor ran in favor of the applicant. Well, it's flipped here. And all DEA is trying to do is make sure that if it's able to grant this exception, it's done safely and to prevent diversion. And, again, I think this recent letter is really instructive because it shows a lot of things. First of all, there are only two questions, so I don't have a projected date about whether this can happen. Things do seem to be moving in a direction where there are fewer questions. And so the second thing is that these questions that DEA asked are reasonable. IOWASCA has never said that anything DEA has asked them for is unreasonable, and they have gotten back again on this. But even that, I mean, again, they've identified a new supplier, so DEA needs time to investigate them. And they've identified a new way of storing the material safely. And, I mean, to me, I don't know whether that's good or not. They put it in a closet and glued it to the wall, and maybe that's good enough. I don't know. But this is the kind of thing I think you'd want DEA to have the time to look at. And final thing, if I could, Craig, both denied the petition for mandamus, but also retained jurisdiction. I think you should just deny the petition and not retain jurisdiction, but denying and retaining jurisdiction or holding in the case in advance would be far superior to issuing some kind of order or setting an arbitrary date for DEA to try to finish this up. And, yes. Just one last question on duty to act. I had thought the strongest basis for duty to act was the APA, and nobody cites it. But it has a provision which says the agency has to conclude a matter presented to it within a reasonable time. Judge Henderson has an American Rivers opinion which says that creates a mandatory duty to act for mandamus purposes. Our only response is National Nurses and what it says about if there's discretion that doesn't seem to matter. But it's a honestly difficult subject that I'm sure you all will be able to figure out. I'm not sure. Thank you. Thank you. Mr. Steele, why don't you take two minutes? Thank you. First of all, on duty to act, two points. I absolutely agree with Judge Katsos. You didn't cite it. I was addressing duty to act questions earlier in terms of is there a duty to take any action under this statute, which seems to me is the question raised by National Nurses. Absolutely courts in cases like Norton and American Rivers and so on have held that you do not need a statutory deadline to create a duty to act by a particular time. Because the APA, as you said, Judge Katsos, falls in that gap. A second separate question on duty to act. Mr. Sturgill referred to the Salt West case. Here's the quote from the 11th Circuit. The government has the authority and indeed the duty to consider an ayahuasca church's refer rights in deciding whether to allow the church to handle ayahuasca free from DEA enforcement. Turning quickly to the timeline and the delays, I think Judge Katsos summarized the timeline very accurately. I would, however, contend that in terms of looking at who is where in the queue, it is not irrelevant that we filed in February 2019 a complete application. The government never suggested that application was incomplete or defective. The government's guidance doesn't say an application has to provide for a site details and a site inspection immediately. The application, the guidance mainly says your initial application should talk about your religion, which we amply did. We did that. The government sat on that and did nothing for three years. That should count in terms of where we are in the queue. The Church of Gaia case was decided to start to finish in two and a half years. We're at two and a half years, as Judge Katsos pointed out, after what happened in 2023, even if you ignore that prior three years. And just to say let the process play out, we've seen how the process plays out. It's taking far too long. And this court has on many occasions, without a hard statutory deadline, said, okay, enough is enough. We order you to report to us in 30 days or we order you to make a decision within four or five months. All right. Thank you.
judges: Henderson; Katsas; Garcia